SILBERMAN, Judge,
Concurring specially.
I concur in the result reached by the majority because I am bound by this court’s precedent in Eisemann v. Eisemann, 5 So.3d 760 (Fla. 2d DCA 2009). The Eisemann court concluded that a trial court may not modify an alimony award that was based on a marital settlement agreement (MSA) rather than “after a trial where the court made the requisite findings of one’s needs and the other’s demonstrated inability to pay the legally required amount.” Id. at 764.
The Former Wife argues that’ the trial court correctly granted modification, including for her previously unmet needs, notwithstanding the fact that she was seeking modification of the alimony amount provided for in the MSA. She asserts the evidence established that the alimony provided for in the MSA was based on the parties’ then financial circumstances. The Former Husband was unable to pay more than the agreed amount, which left her with significant unmet financial needs. Postdissolution, the Former Husband had a substantial increase in his ability to pay, based on his current employment income and the annual inheritance distributions that he would receive over the course of ten years.[4] The For *417 mer Wife had a substantial increase in her financial need, considering her minimal income, based on increased mortgage and utility payments. She submits that the evidence showed the parties’ financial circumstances at the time of the MSA, changes that had occurred, and their current financial situations. Based on that evidence, she argues that the trial court properly determined that modification was warranted.
Although I agree that the evidence was sufficient to support the Former’s Wife’s petition for modification of alimony, Ei-semann requires a different result than that reached by the trial court as to previously unmet needs. This necessitates reversal of the trial court’s order granting modification. However, in my view, Ei-semann interprets the law on modification too narrowly.
Florida law specifically provides that when the parties enter into an agreement for alimony payments and either party’s circumstances or financial ability changes, a party may petition the circuit court for an order to decrease or increase the amount of alimony. § 61.14(l)(a), Fla. Stat. (2006); Bedell v. Bedell, 583 So.2d 1005, 1007 (Fla.1991). But “the court is not required to grant an increase in alimony simply upon proof of a substantial increase in the financial ability of the paying spouse if equity does not dictate that such a change should be ordered.” Bedell, 583 So.2d at 1007. The supreme court added that “a substantial increase in the financial ability of the paying spouse, standing alone, may justify but does not require an order of increased alimony” and, subject to the abuse of discretion standard, “the final decision rests with the circuit court.” Id. Modification is not restricted to situations where the trial court awarded alimony after a trial.
In Eisemann, this court relied heavily on the Third District’s decision in Bedell v. Bedell, 561 So.2d 1179 (Fla. 3d DCA 1989), approved in part, quashed in part, 583 So.2d 1005 (Fla.1991). Eisemann focused on the Third District’s statement in Bedell that to obtain an upward modification of alimony based on a substantial postdissolution increase in the recipient spouse’s needs, “it must be established that a ‘trial court was legally required to award an amount of alimony which did not meet the needs of the recipient spouse.’ ” Eisemann, 5 So.3d at 763 (quoting Bedell, 561 So.2d at 1184). Eisemann relied on that language to reverse modification when the original alimony award was based on the parties’ settlement agreement and not a trial after which a court made the requisite factual findings. Id. at 764.
Eisemann acknowledged that the supreme court’s decision in Bedell did not address the portion of the Third District’s decision on which the Eisemann court relied. Id. at 763 n. 2. But Eisemann expressed a belief that the supreme court’s holding would encompass that portion of the Third District’s decision. Id. I am not convinced that the supreme court, sub si-lentio, adopted that portion of the Third District’s analysis, as now interpreted by this court. Rather, based on the language contained in section 61.14(l)(a) and the supreme court’s analysis in Bedell, I do not *418 believe that parties who enter into an MSA are precluded from seeking modification of alimony to address unmet needs where there have been changes in need or financial ability to pay.
I agree with the majority that a more detailed settlement agreement, addressing future modification of the alimony amount, might have avoided the problem presented in this case. But the result that we reach today seems likely to chill the willingness that parties may have to enter into settlement agreements in eases where their financial circumstances result in unmet needs. Based on the decision here and in Eisemann, a party will be precluded from seeking modification, notwithstanding section 61.14(l)(a) and the language in the supreme court’s decision in Bedell, unless the alimony award was entered following a trial, rather than through a settlement agreement. Proceeding to trial, rather than settling, would be necessary so that future modification would remain available. The majority suggests that the parties could obtain a legal finding of unmet needs at the time they enter into the MSA. But the statute provides for the remedy of modification without the additional stumbling block of petitioning for a finding on needs when the parties are attempting to reach a settlement.
In summary, the situation here reflects changed circumstances as contemplated by section 61.14(l)(a), which grants the trial court “jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties.” The Former Wife, who is disabled, has unmet and substantially increased needs and has had to rely on charities and other family members for food, clothing, and shelter. The Former Husband has also had significant changes — changes that reflect a substantial increase in his ability to pay alimony. Absent the Eisemann decision, I would conclude that the trial court had the ability to modify the alimony amount.

. I note that there is some uncertainty regarding the information the parties had at the *417 time they entered into the MSA regarding the trust, which is the source of the distributions, and the respective interests of the now-deceased primary beneficiary and the Former Husband. The primary beneficiary was alive at the time the parties entered into the MSA. Thus, it was uncertain when the Former Husband would realize any benefits and how much he could expect to receive. And as the majority points out, the Former Husband has received monthly income of $900 per month from the trust in addition to annual lump-sum payments. Those lump-sum payments have been approximately $60,000 each.